# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

KABANA INC,

     Plaintiffs,

vs.                                                                                  No. CV 05-1101 WJ/LCS

BEST OPAL INC.

     Defendants.

## MEMORANDUM OPINION AND ORDER
## DISMISSING CASE FOR LACK OF PERSONAL JURISDICTION

THIS MATTER comes before the Court upon Defendant's Motion to Set Aside Default Judgment filed July 28, 2006 (**Doc. 23**). The motion is granted on one of the grounds raised in the motion – that this Court lacks personal jurisdiction over Defendant.

### Background

This is a copyright infringement case. Plaintiff Kabana, Inc. ("Kabana") is a New Mexico corporation engaged in the design of jewelry products. The products at issue in this case belong to a line of original designs for rings made from precious metals and inlays ("Works"). Defendant Best Opal Inc. ("Best Opal") is a New York corporation in the business of jewelry importing and wholesaling. Kabana asserts that it is the owner of the copyright to the Works which Defendant has allegedly copied, and then sold at a lesser price than the original Works, thereby damaging the market for the original Works as well as Kabana's reputation. According to the complaint, Defendant had access to Kabana's Work through catalog advertising and distribution of the jewelry line in retail stores, trade shows and cruise lines.

On April 26, 2006, the Court entered a final judgment and permanent injunction in the

amount of $623,375.99 (Doc. 20) against Best Opal.  Defendant seeks to set aside that judgment

on two theories: (1) lack of personal jurisdiction over Best Opal, and (2) existence of good cause

or excusable neglect in the event the Court finds that personal jurisdiction exists.

### Discussion

Based on the theories presented in Defendant's motion, the Court construes the motion as

a motion to dismiss.  A motion to dismiss is an appropriate procedural vehicle for resolving

personal jurisdiction and venue issues.  See Fed.R.Civ.P. 12(b)(2) & (3). Affidavits, depositions,

answers to interrogatories, and similar evidentiary matter may be presented and are freely

considered on a motion attacking jurisdiction.  See Sunwest Silver, Inv., v. Int'l Connection, Inc.,

4 F.Supp.2d 1284, 1285 (D.N.M. 1998); Jones v. 3M Company, 107 F.R.D. 202, 204 (D.N.M.

1984).

### I.      Legal Standard for Personal Jurisdiction

"Federal courts sitting in diversity have personal jurisdiction over nonresident defendants

to the extent permitted by the law of the forum." Benally v. Amon Carter Museum of Western

Art, 858 F.2d 618, 621 (10th Cir. 1988) (citations omitted).  Kabana, as the Plaintiff, has the

burden of establishing personal jurisdiction over Best Opal.  See, Kuenzle v. HTM Sport-Und

Freizeitgeräte AG,102 F.3d 453, 456 (10th Cir.1996).

New Mexico applies a three-part test to determine whether personal jurisdiction lies over

non-residents.[1]  The Court must determine whether:  (1) the defendant committed an act or

---

[1]  The copyright infringement statute, 17 U.S.C. § 501, does not provide for nationwide
service of process.  Thus, the usual personal jurisdiction analysis applies, including the New
Mexico long-arm statute.  See, Onderik v. Morgan, 897 F.2d 204, 208 (6th Cir.1989); Volk
Corp. v. Art-Pak Clip Art Service, 432 F.Supp. 1179, 1181 n.2 (D.C.N.Y. 1977) (although
personal jurisdiction in federal question cases is a matter of federal, not state, law, service of

omission specifically set forth in New Mexico's long-arm statute; (2) the cause of action arises

out of that act or omission; and (3) the defendant has sufficient minimum contacts to satisfy due

process concerns.  Tercero v. Roman Catholic Diocese of Norwich, Conn., 132 N.M. 312, 318

(2002).   New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico as far

as constitutionally permissible."  Id.  New Mexico law merges the analysis of whether a defendant

has transacted business or committed a tortious act within New Mexico with the inquiry regarding

whether such activities constitute minimum contacts sufficient to satisfy due process concerns.

Tercero, 132 N.M. at 316 (citing Telephonic, Inc. v. Rosenblum, 88 N.M. 532, 534 (1975).

However, this is true only if the cause of action arises from the particular transaction of business

or commission of a tortious act, and if the minimum contacts were purposefully initiated by the

defendant.  132 N.M. at 317.  Thus, Best Opal's conduct under both elements of the long-arm

statute must be analyzed within the context of due process.[2]  See, Doe v. Roman Catholic

Diocese of Boise, Inc., 121 N.M. 738, 742 (Ct.App.1996), cert. denied, 121 N.M. 693 (N.M.

May 30, 1996); Caba Ltd. Liability Co v. Mustang Software, Inc., 127 N.M. 556, 984 P.2d 803,

807 (Ct.App. 1999) (meaning of [terms in long-arm statute] is to be equated with the minimum

---

process must be made in accordance with the long-arm statute of forum state since Congress has
not provided nationwide service of process in copyright cases).

[2] The long-arm statute reads as follows:
A.     Any person, whether or not a citizen or resident of this state, who in person or through an
agent does any of the acts enumerated in this subsection thereby submits himself or his personal
representative to the jurisdiction of the courts of this state as to any cause of action arising from:
(1) the transaction of any business within this state;(2) . . . the operation of a motor vehicle upon
the highways of this state; (3) the commission of a tortious act within this state;  . . .
                                    ...
C.     Only causes of action arising from acts enumerated in this section may be asserted against
a defendant in an action in which jurisdiction is based upon this section.

contacts sufficient to satisfy due process.") (internal quotes omitted).

Under the Constitutional requirements for due process, a defendant must have sufficient "minimum contacts" with the forum state such that allowing the action to be brought there will not "offend traditional notions of fair play and substantial justice." Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319-20 (1945)); see also, Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd., 385 F.3d 1291, 1296 n.1 (10th Cir. 2004) ("A finding of minimum contacts with the forum is necessary, but is not sufficient for the exercise of personal jurisdiction. A district court must also consider whether personal jurisdiction is reasonable in light of the circumstances surrounding the case").

The International Shoe "minimum contacts" standard may be met in either of two ways: specific jurisdiction, or general jurisdiction. Specific jurisdiction is based on a matter occurring in the forum state, and exists when the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). General jurisdiction lies when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state. Id. at 1532-33. The defendant's conduct and connection with the forum state must be such that defendant "should reasonably anticipate being haled into court there." Id. at 1534 (internal quotation marks omitted).

Plaintiff contends that there is a basis for both general and specific jurisdiction over Defendant.

4

## II.    Analysis

Robert Hertz owns Best Opal with his two sons.  While attending a 2004 trade show in Las Vegas, Nevada, he shipped 19 items in his inventory to an Albuquerque address on request of a customer, for delivery to the store "West of Santa Fe."   The transaction was actually set up by Kabana.  Plaintiff, suspecting infringement by Best Opal, sent a "Kabana customer" to Best Opal's booth at the trade show to purchase the items and have them shipped to the New Mexico store.  See Doc. 13 (Aff. of Virginia Gredell), and Ex. 8 to Response to Mot. to Set Aside Default (Supp. Aff.).  Even if the shipment could be considered a transaction of business under New Mexico's long-arm statute, or a commission of a tort in New Mexico based on Plaintiff's allegations of copyright infringement, this conduct does not pass muster for minimum contacts which satisfy due process requirements.

Plaintiff contends that Defendant has engaged in other contacts with New Mexico which rise to the level of minimum contacts sufficient to confer personal jurisdiction over Best Opal: (1) attendance at trade shows; (2) advertising in national trade magazines; (3); the existence of Best Opal's web site, (4) promotional mailings; and (5) Best Opal's receipt of a cease and desist letter.

### A.    Attendance at Trade Shows

Mr. Hertz attended 2004 and 2005 jewelry shows in Las Vegas, Nevada and 2004 and 2005 jewelry shows in Phoenix, Arizona.  Thompson Aff, Doc. 11 at ¶ 28.   Mr. Hertz has also attended trade shows in Hong Kong (2003) and Switzerland (2002).  In general, he attends three trade shows each year, two in New York and one in Las Vegas.  Resp., Ex. 7, ¶ 2.

It is unclear whether general jurisdiction would result if Mr. Hertz had attended a trade show in New Mexico.  See, e.g., See, Inc., v. Imago Eyewear Pty, Ltd., 67 Fed.Appx. 518, 522

(6th Cir. 2006) ("attendance at one trade show in New York. . .[was] simply insufficient contacts with the United States to satisfy due process").   However, in this case, because none of the trade shows attended by Mr. Hertz took place in New Mexico, there are not "continuous or systematic" contacts with New Mexico for purposes of general jurisdiction.

Nor can specific jurisdiction be based simply on Mr. Hertz' attendance at these trade shows unless Plaintiff can show that Mr. Hertz' attendance at any of these shows was for the purpose of initiating activity with New Mexico.  With the exception of the 2004 trade show in Las Vegas, no sales were made which resulted in shipment of Best Opal's inventory to New Mexico. Cmp, e.g., Snell v. Bob Fisher Enterprises, Inc. 115 F.Supp.2d 17, 22 (D.Me.,2000) (defendant's sale of street-sweepers at major trade show and knowingly selling one to a Maine company did not amount to purposeful "directment" of the product towards the state of Maine); Xactware, Inc. v. Symbility Solution Inc., 402 F.Supp.2d 1359, 1377 (D.Utah,2005) (presence of defendant's representatives at national trade shows  in Texas, Nevada, and New Jersey, did not in itself create purposeful availment directed at Utah residents). Exercising jurisdiction over Best Opal based on the one-time shipment of allegedly infringing inventory to New Mexico would offend due process notions of "fair play" and "substantial justice," particularly in light of the fact that Kabana manipulated the purchase of the allegedly infringing items.

B.    Best Opal's Web site

For Web sites, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction.  See, Soma Medical Intern. v. Standard

Chartered Bank, 196 F.3d 1292 (10th Cir., Utah, 1999); See, Inc. v. Imago Eyewear, 167

Fed.Appx. at 522 (attendance at one trade show in New York and a Web site that permits users

to contact the company through an on-line form are simply insufficient contacts with the United

States to satisfy due process) (citing McGill Technology Ltd. v. Gourmet Technologies, Inc., 300

F.Supp.2d 501, 507 (E.D.Mich., 2004) (holding that the defendant's site was "a classic passive

site" because it provided information about defendant's products and means to contact defendant,

but did not allow  visitor to the site to purchase products or otherwise directly transact business

over the site).

        Best Opal's Web site, www.bestopalco.com, does not allow for interaction by the user,

and thus falls into the category of "passive" Web sites.  The Web site is also under construction,

and as such is not considered a Web site available for use.  See, Am Online, Inv. v. AOL.Org, 250

F.Supp.2d 449, 450 (E.D.Va. 2003).  A passive Web site, such as the one belonging to Best Opal,

can hardly be said to cause "continuous and systematic" contacts with New Mexico for purposes

of general jurisdiction.  See, Xactware, 402 F.Supp.2d at 1365 (ability of Utah residents to access

defendant's Web sites did not by itself show any persistent course of conduct by defendants in

Utah).  Specific jurisdiction does not exist, either, since the alleged infringement did not, and

could not, occur from a passive Web site.

C.      National Advertising in Trade Journals

        Plaintiff contends that Best Opal advertised in national trade journals.  According to the

available evidence, Best Opal advertised once in "Jewelers Circular Keystone" ("JCK").  See Doc.

11 (Thompson Aff., ¶ 28(c)).  Best Opal did not receive any orders from New Mexico or ship any

merchandise to New Mexico as a result of this advertisement.

By itself, national advertising that reaches the forum state is not always sufficient to establish minimum contacts, particularly in this situation which involves a one-time advertisement and little else.  See, Williams v. Bowman Livestock Equipment Co., 927 F.2d 1128, 1131 (10th Cir. 1991) (no basis for determining whether the advertising establishes minimum contacts when record contains no information regarding the extent of national advertising or how much business was derived from such advertising); see, Glater v. Eli Lilly & Co., 744 F.2d 213, 217 (1st Cir.1984) (holding that limited advertising of products in trade journals and employing eight sales representatives in the forum state did not provide minimum contacts sufficient for the exercise of general jurisdiction).

Thus, without more, Best Opal's one-time advertising in "JCK," from which no sale to New Mexico resulted, is insufficient to create a basis for general jurisdiction in terms of "continuous and systematic."  It is also insufficient as a basis for specific jurisdiction, since it did not result in the 2004 shipment to New Mexico which is the basis for the alleged infringement.

E.     Promotional Mailings

Mr. Hertz concedes that there was a mailing from his company about two years ago which may have included a New Mexico recipient, but that no sales resulted from this mailing.  Ex. A to Mem., Hertz Aff., ¶ 6.  This mailing does not contribute to contacts which are "continuous or systematic" enough to result in general jurisdiction.  Specific jurisdiction does not exist either, because the mailing is not connected in any way to the alleged infringement to be considered a purposeful availment of the benefits and protections of New Mexico law.

F.      Notice to Cease and Desist

Plaintiff contends that Best Opal's continued attendance at trade shows after this Court entered a default judgment and after receiving a written notice by Kabana to "cease and desist" the infringing conduct, confers personal jurisdiction over Defendant.   Violation of a judgment which is void does not create a basis for personal jurisdiction.

G.      Whether Presence of Totality of Facts Creates Basis for Jurisdiction

Plaintiff argues that a consideration of all the facts together should result in a finding that this Court has personal jurisdiction over Defendant.  In this case, the whole is not worth more than the sum of its parts.

The facts, considered together, do not support a finding of general jurisdiction because Defendant's contacts with this state were not "continuous and systematic" enough such that Defendant should have reasonably anticipated being haled into this Court: (1) the shipment to New Mexico occurred once, and at the manipulation of Plaintiff; (2) the promotional mailing "may have" included a New Mexico recipient, from which no sales resulted; (3) Mr. Hertz advertised once in a trade magazine; (4) none of the trade shows attended by Mr. Hertz took place in New Mexico, nor was his attendance directed at New Mexico residents; and (5) Best Opal's website is not only under construction, but is a passive website.

The facts, considered together, do not support a finding of specific jurisdiction over Defendant.  Even if the shipment to New Mexico could satisfy the technical requirements of the long-arm statute, minimum contacts with New Mexico do not exist in this case which would comport with the due process requirement.  See, Customwood Mfg., Inc., v. Downey Construction Co., Inc., 102 N.M. 56, 57(1984) (sometimes, if suit arises from the particular

transaction of business, it may fail the due process test because it lacks enough of a degree to which defendant purposely initiated its activity within the forum state).

Plaintiff offers several cases which are either unpublished opinions, or published district court opinions from other circuits. Neither category is binding on this Court. These cases can be sufficiently distinguished from the case at bar so that they are not persuasive.[3] Further, in none of those cases was the Plaintiff involved in setting up the alleged tort or infringement, and none of these cases contain facts similar to this case which raises concerns for violations of "substantial justice" and "fair play."

### Conclusion

Plaintiff has not met its burden of establishing personal jurisdiction over Best Opal. The facts in this case do not convince the Court that it should exercise personal jurisdiction over Defendant. Best Opal's contacts with New Mexico have not been "continuous and systematic" enough to constitute general jurisdiction. Nor has Defendant demonstrated conduct which purposely avails itself of the privilege of conducting activities within New Mexico. Best Opal has not engaged in minimum contacts with New Mexico sufficient to meet due process requirement. Even if it had, personal jurisdiction would not be reasonable in light of the circumstances surrounding the case.

Because this case is disposed of based on a lack of personal jurisdiction, I am not required

---

[3] See, e.g., Caddy Products, Inc. v. Greystone Intern., Inc., unpubl. opin., 2005 WL 3216689 (D.Minn. 2005); Grove v. I.S.E. Sales Corp., unpubl. opin., 1986 WL 13951 (N.D.Ind.,1986); and PDK Labs, Inc. v. Proactive Labs, Inc.; 325 F.Supp.2d 176 (E.D.N.Y.,2004). In the PDK Lab case, the court noted that defendant had "extensively contracted" for both manufacturing and distribution within New York, the forum state, and that defendant "did not argue that the exercise of jurisdiction over it in New York would violate due process." Neither situation applies to Defendant Best Opal.

to address Defendant's alternate theory of dismissal, which seeks to set aside the default judgment based on Fed.R.Civ.P.55(c) and Rule 60(b)(1) & (6).  With that being said, I note from paragraphs 18 and 19 of Mr. Robert Hertz's affidavit that Best Opal was served with the Summons and Complaint in this case and because of concerns over having to hire a lawyer, Best Opal did not initially file a motion to dismiss pursuant to F. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Had Best Opal done so, the default judgment would not have been entered and Best Opal probably would have paid less in attorney's fees than what it will end up paying in getting the default judgment set aside.  For this reason, I will not assess any costs against Kabana. Therefore, each party shall bear their own costs and attorney's fees.

    **THEREFORE,**

    **IT IS ORDERED** that Defendant's Motion to Set Aside Default Judgment (**Doc. 23**) is hereby GRANTED for reasons described above;

    **IT IS FURTHER ORDERED** that the Final Judgment and Permanent Injunction entered by the Court in this matter is hereby declared VOID (**Doc. 21**);

    **IT IS FURTHER ORDERED** that all findings and conclusions on the merits of this cases are hereby VACATED (**Docs. 8 & 20).**

    **IT IS FINALLY ORDERED** that each party shall bear its own costs and attorney's fees.

                                        _____
                                        UNITED STATES DISTRICT JUDGE

11